word in defense of its patent, yet it still maintained that it had properly terminated the licenses of Biogen and Genzyme for failure to pay royalties on the '275 patent.

59. In demonstrating their uncontested likelihood of success on the merits, Biogen and Genzyme submitted sixty-five pages of briefing, as well as nearly four hundred and fifty pages of supplemental materials, including a fifteen-page substantive declaration of Harvey F. Lodish, Ph.D. The Court addressed the motion during a full-day hearing on June 22, 2004. On August 13, 2004, the Court issued a thirty-two page written order denying the motion while finding plaintiffs had made a "strong showing" of likelihood of success on the merits.

60. On September 1, 2004, Columbia filed a limited "covenant not to sue" on the '275 patent. In a letter to the Court dated September 3, 2004, Columbia stated that its notices of termination, on the basis of which it had opposed the preliminary injunction motion, were "ineffective." On September 13, 2004, Columbia wrote to Genzyme and Biogen "withdraw[ing] the notices of termination," but expressly preserving all grounds for termination other than failure to pay royalties on the '275 patent.

### K.   Settlements Extracted By Columbia In Reliance Upon The '275 Patent.

61. After Columbia sent its termination notices in March 2004, it sought to exploit the '275 patent, and the costs and uncertainty of litigation, by attempting to extract settlements from several plaintiffs, including Genzyme, before Columbia withdrew its termination notices. Columbia obtained financial settlements from Ares Trading, Serono, and Baxter in May and June of 2004 with respect to the '275 patent, notwithstanding their allegations of the invalidity and unenforceability of that patent.

62. Columbia sought to obtain a financial settlement from Genzyme in April 2004. As a condition of conducting settlement negotiations, Columbia required Genzyme to sign a

confidentiality agreement prohibiting any communications between Genzyme and its outside litigation counsel Foley Hoag LLP concerning the terms of Columbia's settlement proposal.

63. Columbia admits that that it uses the existence of its pending patent applications seeking to extend its patent monopoly to increase its leverage over potential licensees. Indeed, Columbia tried to obtain the assistance of this Court in this regard, maintaining that the "disclosure of Columbia's pending patent application will unfairly disadvantage Columbia in charting its litigation and settlement strategy with each of the multiple plaintiffs in this action," and expounding that it wanted to "ensure that the individuals advising the plaintiffs in this litigation, and in any settlement discussions, do not have access to this information at all...."

64. Columbia's actions represent an abuse of the patent system and the legal process. It has continued for more than twenty-four years to prosecute a 1980 patent application, going so far as to file a broadening reissue application in 2004. That Columbia delayed filing the reissue application while dragging plaintiffs through months of costly procedural motions makes clear that it also seeks judicial delay, and to ensure that plaintiffs face a moving target. It has engaged in an ongoing strategy to delay court proceedings that plaintiffs brought to remedy Columbia's abusive conduct in the Patent Office, including forcing Biogen and Genzyme to incur substantial costs in defending their licenses, only to assert after the fact that its termination notices were "ineffective." Recognizing that the '275 patent is invalid and unenforceable, Columbia has nevertheless used the patent to its advantage against its licensees while pursuing tactical maneuvers designed to delay or prevent any judicial challenge to the patent.

65. Plaintiffs Biogen and Genzyme have suffered substantial harm, including unnecessary and vexatious costs of litigation and damage to their reputations as a result of Columbia's attempts to enforce the invalid and unenforceable '275 patent, its serial and conflicting motions

to transfer earlier lawsuits, its wrongful termination of their license agreements, its opposition to their motion to enjoin the termination, its motion to stay the prior litigation, its threats of infringement suits, and its bad faith conduct of the earlier litigation.

## Claims

### Count I: Abuse of Process

66. Plaintiffs incorporate all prior paragraphs of this complaint.

67. The '275 patent is invalid and unenforceable.

68. Through its conduct in the litigation over the validity and enforceability of '275 patent, Columbia has manipulated and abused the judicial process for ulterior and illegitimate purposes, namely, to prolong its patent monopoly beyond the statutory term, to extract favorable settlements securing royalty payments on an invalid and unenforceable patent, and to prevent a judicial determination of the validity and enforceability of its patent.

69. Because of Columbia's abuses of the judicial process, plaintiffs have suffered damages.

### Count II: Breach of Contract and of the Implied Covenant of Good Faith and Fair Dealing

70. Plaintiffs incorporate all prior paragraphs of this complaint.

71. The '275 patent is invalid and unenforceable.

72. In March 2004, Columbia wrongfully sent termination letters to Biogen and Genzyme, and their licenses were terminated, in breach of the license agreements. As a result of Columbia's breach of the License Agreements, plaintiffs suffered damages.

73. Columbia is also in breach of Section 2(b) of the License Agreements because Columbia's actions and conduct, including its efforts to enforce and extend the life of an invalid and unenforceable patent, its demands for royalties and fees under the License Agreements, its attempts to prolong its patent monopoly beyond the statutory term, and its efforts to prevent a

judicial determination of the validity and enforceability of its patent, violate Columbia's obligations to the refrain from engaging in repressive licensing practices.

74. The License Agreements, like all valid contracts, contain an implied covenant of good faith and fair dealing. That covenant, along other things, prohibits conduct that would destroy or injure plaintiffs' rights to enjoy the benefit of those agreements.

75. As described above, Columbia breached the implied covenant of good faith and fair dealing by, among other things, wrongfully terminating plaintiffs' license agreements based upon failure to pay royalties on an invalid and unenforceable patent. Columbia's deliberate breach of the implied covenant of good faith and fair dealing has impaired plaintiffs' rights to enjoy the benefit of the license agreements, thereby causing damage and injury to plaintiffs.

### Count III:  Violation of MASS. GEN. LAWS ch. 93A, § 11

76. Plaintiffs incorporate all prior paragraphs of this complaint.

77. Plaintiffs and Columbia are engaged in the conduct of trade or commerce within the meaning of Mass.Gen.Laws c. 93A §§ 1 and 11.

78. Columbia's acts, as described above, constitute unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of Mass.Gen.Laws c. 93A §§ 2 and 11.

79. The '275 patent is invalid and unenforceable.

80. Columbia's unfair deceptive acts in connection with the '275 patent and the related litigation wrongfully impaired plaintiffs' rights under the license agreements and plaintiffs' access to intellectual property that should have entered the public domain. Columbia has also engaged in unfair and deceptive acts and practices by using an invalid and unenforceable patent to wrongfully leverage its bargaining position and attempt to extract illegitimate financial gain.

81. Columbia's unfair and deceptive acts and practices occurred primarily and substantially within Massachusetts.

82. Columbia's unfair and deceptive acts and practices constitute knowing and/or willful violations of Mass.Gen.Laws c. 93A §§ 2 and 11.

83. As a consequence of Columbia's unfair and deceptive acts and practices, plaintiffs have incurred damages.

84. As a direct and proximate result of the foregoing knowing and willful deceptive acts and practices of Columbia, plaintiffs are entitled to multiple damages in an amount to be determined, as well as reasonable attorneys' fees.

### Count IV:  Declaration of Invalidity of the '275 Patent

85. Plaintiffs incorporate all prior paragraphs of this complaint.

86. Plaintiffs are entitled to and seeks a declaratory judgment that the '275 patent is invalid for, without limitation, non-statutory obviousness-type double-patenting, because each of the claims of the '275 patent is the same as, or merely an obvious variant of, inventions claimed in other patents owned by Columbia, singly or in combination.

87. Plaintiffs are further entitled to and seeks a declaratory judgment that the '275 patent is invalid for failure to meet one or more of the conditions of patentability specified in Title 35 of the United States Code, including, without limitation, §§ 101, 102, 103, and 112.

88. There is an actual controversy between plaintiffs and Columbia concerning the validity of the '275 patent.

### Count V:  Declaration of Unenforceability of the '275 Patent for Prosecution Laches

89. Plaintiffs incorporate all prior paragraphs of this complaint.

90. Plaintiffs are entitled to and seek a declaratory judgment that the '275 patent is unenforceable by reason of prosecution laches, specifically, Columbia's unreasonable delay in

prosecuting the applications that resulted in the '275 patent and its continuing activities in connection with the reexamination and reissue proceedings.

91. There is an actual controversy between plaintiffs and Columbia concerning the enforceability of the '275 patent.

### Count VI: Declaration of Unenforceability of the '275 Patent for Inequitable Conduct

92. Plaintiffs incorporate all prior paragraphs of this complaint.

93. Plaintiffs are entitled to and seek a declaratory judgment that the '275 patent is unenforceable by reason of inequitable conduct, specifically, as set forth below, Columbia's (a) advancing misleading statements to the examiner about whether its claims were patentable, (b) failure to make timely disclosure of a related application and its prosecution history, (c) failure to disclose the '636 patent and its prosecution history, and (d) failure to disclose statements it had made to Congress that were inconsistent with positions it took during prosecution of the '275 patent.

94. There is an actual controversy between plaintiffs and Columbia concerning the unenforceability of the '275 patent for inequitable conduct.

#### 1. Misleading Statements Regarding the Patentability of Claims of the '275 Patent

95. As previously set forth, Columbia held three patents that all relied upon the same original disclosure and that expired in August, 2000: the '216, '665, and '017 patents. To overcome double-patenting rejections, Columbia filed terminal disclaimers that ended the term of the '665 patent and the '017 patent on the expiration date of the '216 patent.

96. During prosecution of the '275 patent, in an office action dated February 3, 1998, the examiner rejected all pending claims for double patenting over the issued claims of the '017 patent. These rejected claims, then numbered 126-132, were drawn to DNA constructs for

transforming cells and, in the case of claim 132, eukaryotic cells transformed using such constructs.

97. In response to the February 3, 1998 office action, on July 24, 1998, Columbia canceled claim 132, the only claim to transformed eukaryotic cells then pending. Columbia also argued that the remaining DNA construct claims were not subject to double-patenting rejection over the '017 patent. Columbia stated: "The 'right to exclude' provided by claims 1-4 of U.S. 5,179,017 relates to <u>transformed Chinese Hamster Ovary (CHO) cells</u>. Thus, the 'right to exclude' provided by U.S. 5,179,017 relates only to the manufacture, use and sale of CHO cells. In contrast, the 'right to exclude' which would be provided by claims 126-131 of the subject application would, if allowed, relate to the manufacture, use and sale of <u>DNA constructs</u>." July 24, 1998 Response, pp. 2-3 (emphasis in original). Thus, Columbia acknowledged that the claims that issued in the '017 patent relate to transformed CHO cells.

98. During prosecution of the '275 patent, in an amendment filed June 14, 2001, Columbia added numerous new claims, some of which ultimately issued in the '275 patent. The Remarks accompanying this amendment stated that the new claims were "not subject to the obviousness-type double-patenting rejection." It then listed the claims in groups and explained why each group was not subject to rejection on double-patenting grounds. In each case, however, Columbia presented argument only about why the claims were not subject to double-patenting in view of the '216 patent, not the '017. Because the claims about which Columbia presented these arguments were newly submitted, Columbia did not make its assertions about double-patenting in response to an examiner's rejection of claims; rather, Columbia made these statements preemptively, to deter the examiner from issuing double-patenting rejections. By this

time, a new examiner, who had not been involved in the double-patenting rejections in February 1998, was now assigned to the case.

99. In asserting that the new claims in the '136 application (which led to the '275 patent) were not subject to double-patenting rejections over the '216 patent, Columbia misled the Patent Office by failing to draw the new examiner's attention to the claims of Columbia's other patents, and most significantly the '017 patent. The claims of the '017 patent, which provided the basis for double patenting rejections in 1998 by the examiner at that time, are substantially similar to the new claims Columbia added to the '136 application in June 2001 and could have provided a basis for a double-patenting rejection of the new claims.

100.   Columbia's statement that the new claims should not be rejected over the '216 patent, while failing to draw the examiner's attention to grounds for rejection over the '017 patent, was misleading because it implied that the '216 patent was the only basis upon which a double patenting rejection could be made. Moreover, in view of Columbia's statements in the July 24, 1998 Response conceding that the '017 patent relates to transformed CHO cells, Columbia was aware that the newly asserted claims, many of which were directed to transformed CHO cells, were vulnerable to double-patenting rejections over the '017 patent claims. Given the facts recited above, it is reasonable to infer that Columbia's misleading omission of Columbia's other issued patents, particularly the '017 patent, from its preemptive argument to the new examiner was a deliberate and intentional effort to draw attention away from the other grounds on which the claims could be rejected for double-patenting and thus to mislead the examiner.

101.   Moreover, the very arguments that Columbia raised to head off double patenting rejections of the newly added claims were themselves substantially false and misleading. For

example, Columbia stated that certain of the new claims were not vulnerable to double patenting rejections because "none of the claims of the '216 make obvious a recitation of 'linked' [DNA I and DNA II]." In fact, issued claim 54 of the '216 patent recites transforming a eukaryotic cell "with a molecule which is **formed by linking** one of said foreign DNA I molecules to a DNA II molecule."

102.   As another example, Columbia stated that other of the newly added claims were not vulnerable to double patenting rejections because "none of the claims of the '216 make obvious a recitation that both DNA I and DNA II are amplified." However, issued claim 54 of the '216 patent (for example) recites transforming cells with a molecule formed by **linking** a DNA I to an **amplifiable** DNA II, and culturing the transformed cells under conditions "permitting survival or identification of eukaryotic cells which have acquired multiple copies of said amplifiable gene." Because DNA II is an amplifiable gene linked to DNA I, it is inherent in the claim that the end result is both amplified DNA I and amplified DNA II. Therefore, contrary to Columbia's assertion, claim 54 does indeed make obvious a recitation that both DNA I and DNA II are amplified.

103.   In an office action on the '136 application dated July 30, 2001, the examiner rejected a number of the newly added claims for, among other things, obviousness-type double-patenting over claim 73 of the '216 patent.

104.   In response to this office action, in a paper filed January 30, 2002, Columbia again stated that the claims were not obvious in view of the '216 patent for the same reasons it had asserted in its June 14, 2001 amendment. Like the June 14, 2001 amendment, the January 30, 2002 paper made no mention of the '017 patent or the fact that the claims of the '017 patent were substantially similar to the claims Columbia was then seeking.

105. Like the June 14, 2001 Remarks, Columbia's January 30, 2002 statement that the new claims should not be rejected over the '216 patent, while failing to draw the examiner's attention to grounds for rejection over the '017 patent, was misleading because it implied that the '216 patent was the only basis upon which a double-patenting rejection could be made. Upon information and belief, Columbia presented these statements with intent to mislead the patent examiner. The '275 patent is therefore unenforceable due to inequitable conduct in its prosecution.

### 2. Failure to Disclose Rejection of Substantially Similar Claims in '159 Application

106. As set forth above, on June 7, 1995, Columbia filed two continuation applications relying on the original disclosure filed in February 1980. One of these applications matured into the '275 patent. The other, serial no. 08/477,159 ("the '159 application"), is still pending today.

107. The '159 application included claims directed to subject matter that is substantially similar to the subject matter claimed in the '275 patent. For example, claim 135 of the '159 application was substantially similar to issued claim 14 of the '275.

108. On April 22, 1997, the examiner then assigned to the '159 application issued an office action rejecting claims in the '159 application for double patenting over the '017, '216, and '665 patents, including claim 135. The claims were also rejected for failure to satisfy 35 U.S.C. § 112. Because these claims are substantially similar to claims that issued in the '275 patent, these rejections are highly material to the patentability of those claims.

109. Despite the materiality of the '159 application and the rejections of claims substantially similar to the '275 claims in April 1997, Columbia did not make the existence of the '159 application of record in the '275 prosecution until May 6, 2002, nearly **seven years** into the co-pendency of the two applications and a mere three months before allowance of the claims

of the '275 patent. Even then, Columbia failed to disclose to the examiner the prior double-patenting rejections, by a different examiner in the '159 prosecution, of claims substantially similar to those in the '275 application. This contrary decision by another examiner was material to the patentability of the '275 claims.

110. Given the facts recited above, it is reasonable to infer that Columbia's unreasonable delay in disclosing the '159 application, as well as its failure to disclose the rejection of substantially similar claims by a different examiner in that case, was deliberate and intentional. Therefore, the '275 patent is unenforceable due to inequitable conduct in its prosecution.

### 3. Failure to Disclose '636 Patent and Rejection of Substantially Similar Claims

111. As previously set forth, Columbia's '636 patent, which issued in 1992, was pending during the prosecution of several of the submarine applications that ultimately led to the '275 patent. The claims of the '636 patent include claims directed to (a) processes for generating multiple copies of a foreign DNA I in eukaryotic cells and (b) product claims directed to eukaryotic and mammalian cells into which foreign DNA I has been introduced by the claimed processes. These product-by-process claims of the '636 patent overlap in scope with at least claim 5 of the '275 patent and its dependent claims. The '636 patent was prosecuted by the same law firm that prosecuted the '216 patent and its continuations and divisional applications (along with foreign counterparts, "'216 patent family"), including the '275 patent.

112. Columbia never disclosed the '636 patent to the examiner or made it of record during the prosecution of the '216 patent family, despite the fact that the '636 patent could have provided a basis for a double patenting rejection of various claims in the numerous applications that led to the '275 patent. Thus, the existence of the '636 patent was material to the

patentability of claims Columbia prosecuted in the '216 patent family, including at least one claim that issued as part of the '275 patent.

113. The '636 file history includes rejections of claims that are substantially similar to claims pursued during prosecution of the '216 patent family, including the '275 patent. For example, in application 06/683,251, the second application in the chain that led to the '636 patent, Columbia pursued two claims, 24 and 25, that are substantially similar to issued claim 5 of the '275 patent. In an office action dated June 3, 1986, the examiner rejected these claims as anticipated by or obvious in view of the '216 patent or a related published international application. Undaunted, Columbia pursued these same claims in application 07/103,807, the third application in the chain leading to the '636 patent. They were again rejected, on the same grounds, in an office action dated March 24, 1988. These rejections evidence the closeness between the '216 patent family (which includes the '275 patent) and the claims Columbia was seeking in prosecuting the '636 patent. Thus, it is highly likely that a patent examiner evaluating the claims proposed in the applications leading up to the '275 patent would have wanted to be informed of the rejection, by a different examiner, of claims pursued in prosecution of the applications leading up to the '636 patent. Those rejections are therefore material to the patentability of the claims asserted during the prosecution of the '216 patent family, including the claims that ultimately issued in the '275 patent.

114. Notwithstanding the more than **twenty years** between the filing of the application that led to the '636 patent and the issuance of the '275 patent, and the many information disclosure statements Columbia filed in the prosecution of the '216 patent family during that time period, Columbia failed to make the pendency, the issuance, or any part of the file history of the '636 patent of record in any of the applications that led to the issuance of the '275 patent.

115. As the owner of the '636 patent as well as the '275 patent, Columbia was aware of the materiality of the '636 patent and its file history to the '275 patent, as was its patent counsel, who prosecuted both the '636 and the '275 patents. Given the singular commercial and financial importance of the '216 patent family, it is reasonable to infer that Columbia's strategy for prosecuting that patent family and, in particular, the applications leading up to the '275 patent, did not arise from inattentiveness or accident. Given the facts recited above, it is also reasonable to infer that Columbia's failure to disclose the '636 patent or its file history during the prosecution of the '216 patent family was deliberate and intentional. Therefore, the '275 patent is unenforceable due to inequitable conduct in its prosecution.

### 4. Failure to Disclose Statements to Congress Inconsistent With Positions Taken Before the Patent Office

116. As previously set forth, as the expiration date of the '216, '665, and '017 patents loomed, Columbia undertook a lobbying campaign in an attempt to secure from Congress an extension on its monopoly over the technology claimed in the '216 patent. In the course of that campaign, Columbia made numerous statements to Congress that were inconsistent with positions it took in its concurrent prosecution of the '275 patent claims in the Patent Office. In its statements to Congress, Columbia emphasized the breadth and pioneering scope of the '216 patent. Indeed, Columbia told Congress that its patent broadly claimed both "cotransformed cells and the process of making them." In its statements to the Patent Office, on the other hand, Columbia argued that the scope of the '216 patent was much more limited. Columbia never disclosed to the Patent Office during prosecution of the '275 patent the inconsistent representations it made to Congress in 2000, in violation of its duty of candor to the Patent Office under 37 C.F.R. § 1.56.

117. Columbia also made inconsistent representations to Congress and the Patent Office on narrower issues. For example, Columbia told Congress that the '216 patent covered both what is known as "linked" cotransformation as well as what is known as "unlinked" cotransformation. With respect to linked cotransformation, Columbia told Congress that under the '216 patent, "[t]he genes of interest can be joined together in a single DNA construct prior to their introduction into the cell of interest." Columbia also asserted to Congress that "[t]he Cotransformation process [claimed in the '216 patent] permit[s] the ... amplification of the gene of interest for the purpose of expressing large amounts of the protein it encoded."

118. In prosecuting the '275 patent, by contrast, Columbia characterized the claims of the '216 patent far more narrowly. For example, as set forth above, Columbia stated, in June 14, 2001 and January 30, 2002 responses to office actions, that "none of the claims of the '216 make obvious a recitation of 'linked' [DNA I and DNA II]." Columbia also stated that "none of the claims of the '216 make obvious a recitation that both DNA I and DNA II are amplified." These statements were made to avoid obviousness-type double-patenting rejections over the '216 patent and were meant to persuade the examiner to read the '216 patent's claims with a narrow scope.

119. Thus, Columbia's assertions to Congress of the sweeping breadth of the '216 patent directly contradict its exhortations to the examiner of the '275 patent to read the '216 patent narrowly. Columbia never disclosed its statements to Congress to the Patent Office or advised the examiner that it had ever taken contrary positions as to the scope of the '216 claims. It may reasonably be inferred from these facts that Columbia's omission to disclose these inconsistent statements to the Patent Office was deliberately misleading. The '275 patent is therefore unenforceable for inequitable conduct.

### Count VII:  Declaration of Unenforceability Due to Patent Misuse

120. Plaintiffs incorporate all prior paragraphs of this complaint.

121. The '275 patent is invalid and unenforceable.

122. Plaintiffs are entitled to and seek a declaratory judgment that the '275 patent is unenforceable by reason of patent misuse because Columbia has impermissibly sought to extend the economic benefit of its patent estate beyond its permissible scope. Among other things, Columbia has demanded royalty payments beyond the legitimate scope of its patent rights, enforced a patent it knew or had reason to know was invalid, manipulated the patent process and court proceedings to postpone indefinitely court consideration of the validity and enforceability of its patent, and attempted to monopolize intellectual property that should have entered the public domain in 2000.

123. There is an actual controversy between plaintiffs and Columbia concerning the unenforceability of the '275 patent.

### Count VIII: Declaration of Exceptional Case

124. Plaintiffs incorporate all prior paragraphs of this complaint.

125. Plaintiffs are entitled to and seek a declaratory judgment that this is an exceptional case under 35 U.S.C. § 285 and that they are entitled to an award of reasonable attorneys' fees, costs, and expenses.

### Requests for Relief

For the reasons set forth above, and for such other reasons that may be presented at trial, plaintiffs seek the following relief:

A. Judgment for plaintiffs against Columbia on all counts of this complaint;

B. Declarations of invalidity and unenforceability of the '275 patent on the grounds set forth above;

C. Actual damages in favor of plaintiffs and against Columbia;

  D. Treble damages for Columbia's knowing and willful violations of M.G.L. c. 93A § 11;

  E. A declaration that this is an exceptional case under 35 U.S.C. § 285;

  F. An award of reasonable attorneys' fees, costs, and expenses; and

  G. Such other or further relief that the Court deems just.

Dated: September 17, 2004

                 BIOGEN IDEC INC., BIOGEN IDEC MA, INC. and GENZYME CORPORATION

                 By their attorneys,

                 *[signature]*

                 Donald R. Ware  BBO # 516260
                 Claire Laporte  BBO # 554979
                 Carla Miriam Levy  BBO # 654212
                 Eva Ogielska Zei  BBO # 655501
                 FOLEY HOAG LLP
                 155 Seaport Boulevard
                 Boston, MA 02210-2600
                 (617) 832-1000