# EXHIBIT G

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BIOGEN, INC., ET AL        )   CA 03-11329
                           )   Boston, MA
v.                         )   June 22, 2004
                           )
COLUMBIA UNIVERSITY, ET AL )

BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE

APPEARANCES:

(As previously noted.)

JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10-Room 5200
Boston, MA 02210
(617)946-2577

80

1  Cordis II in that way?

2      MR. GINDLER:  Sure.  Let me raise two points.
3  I think that there's really no pressure on them as to the
4  '159, because we know exactly what's going to happen if
5  the '159 issues.  They're going to challenge the
6  validity, which they can only do if they don't pay
7  royalties.  If they think the '275 patent is invalid on
8  prosecution laches grounds, do you have any doubt they'll
9  be here challenging the validity of the '159 on
10 prosecution laches grounds?  Well, of course, they are.
11 And they can't do that while paying.  So that decision
12 has been made.

13     THE COURT:  Well, I don't know about that.  I
14 mean, in this case, they thought they made all of their
15 payments, and they didn't know about the '275 until a
16 couple of days after they sent you a check and said,
17 here's the last check.  But, presumably, they read the
18 '275 patent, and Biogen and Genzyme in consultation with
19 their lawyers made a decision.  They said, you know, it's
20 in our business interest to stop paying.  We think we can
21 invalidate this patent.  But because they haven't seen a
22 '159 patent and they can't read the full prosecution
23 history, they can't make a comparable judgment.  I mean,
24 if they -- I'm sorry, I don't mean to be talking about
25 things that may not be in the record here.  But when I

```
                                                            81
```

1   did the Biogen case a couple of years ago, Avonex was
2   generating close to a billion dollars a year. It was
3   either their only product or, by far, their dominant
4   product. They'd really be betting the whole business
5   here, buying the pig in the poke, because you really
6   think you're going to come out of this with a valid '159
7   patent. Maybe they'll agree and say, wow, they figured
8   out a way to do it.
9          MR. GINDLER:  You know, I think I can address
10  that issue right now and that concern, and I can make a
11  representation on behalf of Columbia University because I
12  thankfully have the general counsel from the University
13  seated right behind me.
14          THE COURT:  Who's that?
15          MS. KEEFER:  I am, your Honor.
16          THE COURT:  Say your name for the record.
17          MS. KEEFER:  Elizabeth Keefer.
18          THE COURT:  Go ahead.
19          MR. GINDLER:  We will never in this case
20  against Biogen or Genzyme or any other plaintiff ever
21  seek a preliminary injunction to stop them from making
22  and using and selling their products, either on the '275
23  patent or, if it issues, on the '159. We will never seek
24  a preliminary injunction. Columbia is not going to stop
25  before a final judgment in any case any of these

82

1  companies from delivering pharmaceuticals that they make
2  in discovery. That is a risk none of them face. We
3  won't do it.
4      THE COURT: Well, they face the risk still,
5  though, that they'll get to the end of the litigation,
6  your '159, as it emerges, you know, will be valid, and
7  then they're out of business unless they get a license.
8      MR. GINDLER: And then they face, as simply
9  every other party has faced, the patent infringement
10 suit. And think about what our interests are. We only
11 benefit from royalties. Columbia doesn't benefit from
12 enjoining them. We don't make and sell anything. We're
13 a university. So think about what our interests are.
14 Our interests are not in putting Biogen out of business
15 and to stop the delivery of Avonex to people who need it.
16 What would happen to our mission --
17     THE COURT: They're telling me then Serono would
18 have a monopoly, raise the price, you'll get more
19 royalties.
20     MR. GINDLER: That would be great headlines for
21 Columbia University. Columbia enjoins sale of Avonex. I
22 really just don't see that in the cards. And to be real
23 clear, we're never going to try and do that at any time
24 before there's a final judgment in the case.
25     THE COURT: When there is a final judgment, you

                                                            198

1    double patenting case, and all I've seen is their side of
2    the story so, at the moment, it looks good.  Let's see.
3    And if not, you know, I'll look at what's in the record
4    on prosecution laches.  But, you know, if the case
5    doesn't get resolved as a result of the double patenting
6    issue getting done, then you should know that I don't
7    take any vacation from July to July, but I do take off
8    July, and that's why the Biogen decision with Berlex was
9    August 15, because I wrote it on vacation.  But I don't
10   want to do that anymore.  Last summer, I did the death
11   penalty.  All my big decisions are in August or
12   September, including one that was 661 pages long.  But I
13   don't want to do that anymore.  So don't plan your
14   vacations for next August.  Get used to enjoying the 4th
15   of July.  All right?  Because if this doesn't take care
16   of it, you know, we'll probably be here next year and the
17   year after and the year after that even.
18           There's another issue that has to be addressed.
19   In that July filing that the plaintiffs, I think, were
20   going to make possibly on discovery, you should also
21   address what needs to be done to get the cases that were
22   initiated to other jurisdictions to Massachusetts for the
23   purpose of trial on the double patenting issue, if trial
24   is necessary.  And it may be, if it's complicated under
25   the MDL rules, because the general rules say except in

199

1   special circumstances, there are remands for trials, it
2   may be that you just, you know, we make some agreement
3   that, you know, the other parties are in privity with the
4   Massachusetts parties, and their lawyers can participate
5   in the case, and then you'll be bound by the decision,
6   even though we didn't literally try your case. Just if
7   you have to be inventive, be inventive, because this does
8   make sense, apparently. The plaintiffs are agreed to it,
9   and Columbia wanted it all in one place. So you'll get
10  one answer. Who knows what it will be. Because if this
11  isn't amenable to summary judgment, all of us will do
12  everything we possibly can to make this as clear as
13  possible to a jury but, at that point, you'll be rolling
14  the dice. At every point, you're rolling the dice.
15  Don't half the decisions by District Judges get reversed
16  in the Federal Circuit? And I've already been -- well,
17  actually, I wasn't completely affirmed. Statistically,
18  I'll get reversed the next time. I mean, I say that. I
19  haven't discerned that there's anything I could do to
20  encourage a prompt settlement. It seems to me there's
21  too much money involved, and the positions seem to be
22  disparate. But if anybody at any point in this case, if
23  you all start talking settlement and think seeing me
24  might help you, just let me know. I would much prefer --
25  I would happily spend time with you on that if there was,

200

1   you know, any hope that it might resolve everything.
2   Because I really, I think, you know, $2 billion over 17
3   years or something to a college, that's very important.
4   I can see that. And biotech companies that are reliant
5   on these products are the people who need the products
6   support to them too. So if anybody thinks he or she has
7   glimpsed some way that this can be resolved by agreement,
8   I'd love to try to facilitate that or give you a chance
9   to go to somebody to facilitate it. Okay?
10          Anything else?
11          All right. Mr. O'Leary will let you out. I'll
12  have to -- I'll issue a decision on the motion for
13  preliminary injunction and the stay. But whatever it is
14  -- and on the -- with regard to the documents, that will
15  probably stay where it is for now. But maybe not. But
16  whatever the outcome of the preliminary injunction, we'll
17  go ahead on this schedule.
18          Thank you.
19          ALL COUNSEL: Thank you, your Honor.
20
21
22
23
24
25