# EXHIBIT H

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


IN RE COLUMBIA UNIVERSITY          )   CA 04-01592
                                   )   Boston, MA
PATENT LITIGATION, ET AL           )   October 6, 2004
                                   )
                                   )


BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE


APPEARANCES:


(As previously noted.)


JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10~Room 5200
Boston, MA 02210
(617)946-2577

14

1    expect.

2         So, I mean, I think that intended way to proceed

3    is a reasonable exercise of my discretion.  I have to

4    manage my docket.  Conservation of judicial resources is

5    a cognizable concern in exercising discretion over

6    whether to hear a declaratory judgment matter.  And this

7    is the other issue I asked you all to look at, but I

8    didn't really see it addressed in the extensive briefs

9    before Monday.

10         So, you know, I think that while Columbia can

11   change its mind in the future if it loses on this after I

12   write something, you know, I'm not just entitled but

13   required, pretty much, to address a fixed target.  These

14   are the facts.  What are the legal implications of the

15   facts?

16         I think, in fairness, Mr. Gindler, I should say

17   one other thing to you.  I'm going to take a break.  I'm

18   going to give you a chance to consult at least your

19   colleagues.  And you can stick with what you told me

20   yesterday or you can give me some unqualified

21   representation as to the scope, you know, we'll expand

22   the scope of the covenant.  And I don't want you to get

23   sandbagged.  I can't make up my mind until the end.  But

24   I've got the Spectronics covenant.  At the moment, I'm

25   hard pressed to see how this case is distinguishable from

1    Spectronics.  If I don't have the Spectronics covered, I

2    regard it as a hard case.

3         But the one thing I want to say before I stop is

4    that whatever you -- however you respond to this

5    question, I think, could become evidence in this argument

6    as to whether there's a reasonable apprehension of suit.

7    In Fena (sic), 141 F 3rd 1479 at 1484, and C.R. Barn, 716

8    F 2nd 874 at 881, I noticed that the Federal Circuit

9    referred in part to statements made in the arguments as

10   evidence of whether the parties seeking the declaratory

11   judgment had a reasonable apprehension of being sued.

12        So I'll, you know, if you want, happily, you

13   know, take the break, let you consult, or if you want to

14   consult about how to respond to this.  But when I have

15   the hearing, I want to be knowing exactly what the scope

16   of the covenant is for present purposes.

17        MR. GINDLER:  Your Honor, I think I can respond

18   right now, which is that when I read your Honor's order,

19   I understood it actually to be asking will we extend the

20   covenant to be coextensive with Spectronics?  I just

21   looked at Spectronics again, and I think I'm correct

22   about that.  I think you're correct about that.  And I am

23   authorized to say today that we will extend the covenant

24   in exactly the manner that your Honor has inquired.

25        THE COURT:  I'm not ordering you to do it.

16

1           MR. GINDLER:  I know you're not.

2           THE COURT:  Oh, inquired.  I thought you said

3      required.

4           MR. GINDLER:  No, inquired.  You asked an

5      inquiry, and we will extend the covenant exactly as your

6      Honor has inquired in this order.

7           THE COURT:  And is it your understanding that

8      that makes it coextensive with Spectronics?  Basically,

9      there will be no liability -- plaintiffs will have no

10     liability for anything that occurs prior to the time the

11     '275 is reissued.  We'll put aside the '159 for the

12     moment.  And even if it's reissued with the same or

13     substantially similar claims, any damages for which they

14     might be responsible would only be prospective, after the

15     date of the reissuance.

16          MR. GINDLER:  That is exactly my understanding.

17     But, in addition, I don't think they would have any

18     liability on claims in a reissue patent which are the

19     same or substantially identical to.  That's covered by

20     the covenant.

21          I'll say it a different way.  Their only

22     liability would be on claims that are not the same and

23     not substantially similar to.  That's the consequence of

24     Spectronics.

25          THE COURT:  And my understanding from

1    Spectronics, among other cases, is that if in the

2    reissuance there are claims issued that are not the same

3    or substantially similar to a claim in the original

4    patent, liability runs only prospectively for damages?

5              MR. GINDLER:  That is also correct.

6              THE COURT:  So, basically, in view of what

7    you've just represented to me, they have -- plaintiffs

8    have no exposure for anything relating to the claims in

9    the '275 patent unless and until it's reissued?

10             MR. GINDLER:  That is exactly correct.

11             THE COURT:  And then their only exposure would

12   be for conduct after the date of the reissuance?

13             MR. GINDLER:  Also correct.

14             THE COURT:  I think the plaintiffs have got

15   something to think about, because the question is,

16   essentially, whether you're willing to take yes for an

17   answer.  And I'll take a break so you can talk about that

18   too.  You can talk about affiliates.  I don't think the

19   affiliates are parties in front of me.  You know, you

20   talked about, I think, Genentech had paid some money.  If

21   you show Mr. Gindler that's true, he'll give it back,

22   Columbia will give it back.

23             Should I take -- this is, I think, a material

24   development.

25             MR. WARE:  I think that makes sense, take a

18

1 | break.

2 | THE COURT:  Okay.  All right.  Thank you.

3 | MR. GINDLER:  Thank you, your Honor.

4 | (Short break.)

5 | THE CLERK:  Court is back in session.  You may

6 | be seated.

7 | THE COURT:  We've had a lengthy break.  What is

8 | the plaintiffs' response?

9 | MR. WARE:   Your Honor, one thing, perhaps,

10 | would be useful to do, we've also had some conversations

11 | with Mr. Gindler to try to clarify still some questions

12 | about the scope, and it would perhaps be helpful if we

13 | could address that first.

14 | THE COURT:  You mean have more time to talk?

15 | MR. WARE:   No, no, I don't mean that.  But I

16 | think that -- and perhaps Mr. Gindler is prepared to do

17 | that --

18 | THE COURT:  Why don't you tell me -- you mean

19 | you want to do it here in my presence on the record?

20 | MR. WARE:   Yes.

21 | THE COURT:  So what are your questions?

22 | MR. WARE:   Well, one question that we wanted to

23 | be clear on is that this was a true Spectronics covenant

24 | in the sense that there would be never any liability on

25 | the '275 patent, either prospective or retrospective.  In

1    other words, unless and until there were the grant of a

2    reissued patent or a reexamination patent that had other

3    claims, the '275 patent could never be asserted at any

4    time against any activity or any products.  And I believe

5    that Mr. Gindler agreed.  But I think it would be helpful

6    to clarify that.

7         MR. GINDLER:  I believe that's what I said

8    before the break.  I understand the Spectronics covenant

9    to say that on the patent as it currently reads that

10   there's no liability at all.  And that was only liability

11   on a patent that has claims which are not the same as or

12   not substantially identical to the claims of the '275

13   patent as it currently reads.

14        MR. WARE:  Now, having clarified that, two

15   other things that we ask clarification on.  One is does

16   this covenant extend to affiliates such as Biogen Idec,

17   Inc?  The answer was no.

18        MR. GINDLER:  Correct.

19        THE COURT:  Okay.

20        MR. WARE:  And then the second --

21        THE COURT:  You know, if necessary, I can

22   probably decide that issue for you today after I hear

23   from you again.

24        MR. WARE:  And then the other thing that we

25   wanted to put on the record is we asked does the covenant

1    extend to a patent that issues on the '159 application

2    that has identical or substantially identical claims?

3            THE COURT:  And I had actually meant to clarify

4    that myself.

5            MR. WARE:    And the answer was no, it does not.

6            Is that correct?

7            MR. GINDLER:  That's correct.

8            MR. WARE:    Now --

9            THE COURT:  I want to see if I understand the

10   implications of some of these answers.

11           If a '159 patent is issued and it has some

12   claims that are the same or substantially the same as

13   claims in the '275, will any of the plaintiffs have any

14   liability pursuant to those claims for anything that

15   occurred prior to the issuance of the '159, as you

16   understand it, Mr. Gindler?

17           MR. GINDLER:  I think the answer is that we have

18   never thought of the '159 as part of the case.  We don't

19   agree that there are any claims in the '159 that are the

20   same or substantially similar to, but we have always

21   excluded the '159 from the scope of the covenant.  And so

22   our response has been that the covenant does not apply to

23   the '159 application at all.

24           THE COURT:  Let me ask you a more general

25   question of patent law.

21

1          (Short pause.)

2          THE COURT:  I think you all may agree on this.

3   Can there be any liability under the '159 patent as

4   opposed to the '275 for anything that any of the

5   plaintiffs do before the '159 patent is issued?

6          MR. GINDLER:  On liability for damages, of

7   course not.

8          THE COURT:  You say, of course not.  I'm a

9   criminal lawyer.  I just want to clarify.  That's my

10  understanding.

11         MR. GINDLER:  My knowledge of patent law is that

12  we don't have any rights under the '159 application until

13  it issues as a patent, and then we can assert the '159 if

14  it ever issues.  Right now, it's in the Patent Office,

15  and it's not doing very well right now, as everyone

16  knows.  And, so, only if things change and only if it's

17  issued will there be any liability.  So, for right now,

18  no one has any liability.

19         THE COURT:  And, Mr. Ware, do you have a

20  different view of when any potential liability would

21  start running?

22         MR. WARE:   On a new patent that came out of the

23  '159 application, it would not be until the patent

24  issued.

25         THE COURT:  So you agree with Mr. Gindler?

22

1          MR. WARE:    Yes, that's correct.

2          THE COURT:    So even if you thought that a claim

3  was the same as a claim in the '275, essentially, as it

4  sounds to me, there's a kind of symmetry in what Mr.

5  Gindler was saying in the sense that under the covenant

6  as he has described it this morning -- I'm sure it can be

7  written down -- no plaintiff has any exposure for damages

8  for anything it's doing now under either the '275 or the

9  potential '159, right?

10         MR. WARE:    I think that is correct.

11         THE COURT:    That's good from your clients'

12  perspective, isn't it?

13         MR. WARE:    We've made progress.

14         THE COURT:    You've made progress.    I don't know

15  what you expected to achieve in the case.

16         What else?

17         MR. WARE:    So what I would like to do, your

18  Honor, is, at least on behalf of my clients, is express

19  the concerns that they have that -- how this falls short,

20  how this does not reach and does not resolve the problems

21  that we are facing.

22         THE COURT:    All right.    So, based on this new

23  record, you want to argue that the case still shouldn't

24  be dismissed either because there's no case or

25  controversy or there's an exercise of my discretion or

23

1    stay it, because I think all three of those are related

2    issues?

3            MR. WARE:    Yes.

4            THE COURT:    But if there's no case or

5    controversy, if I have no discretion, I can't do it.

6            MR. WARE:    Yes.  So, if I may, your Honor?

7            THE COURT:    Go ahead.

8            MR. WARE:    So when we spoke with Mr. Gindler,

9    he said -- he began conversation -- this was in the

10    context of the reissue of the issued patent -- as saying

11    the only thing you have to worry about is, and then he

12    referred to claims in a reissue patent that are not

13    substantially similar to claims in the existing '275.

14    And then the conversation went further to the '159, and I

15    said, well, we also have to worry about the '159.  And

16    that's when I asked, even if the same claim is in the

17    '159, we have to worry about that.  And that's, as he

18    said, clearly not within the scope of the covenant.

19            So let me address why those are of concern to us

20    and why we think the court still has subject matter

21    jurisdiction under the case law.

22            THE COURT:    And, in the process, you'll tell me

23    why this case is now distinguishable from Spectronics in

24    a way that creates a case or controversy.

25            MR. WARE:    Yes, your Honor.

1        TCI California also contends.  Do you see that?

2                THE COURT:  Yes.

3                MR. GINDLER:  I'll read that to you:  TCI

4        California also contends that it could be required to

5        indemnify an entity that potentially could be held liable

6        in a different case for infringing the '202 patent.  If

7        TCI California's interests are affected by a different

8        suit regarding the 202 patent, then TCI California should

9        join the action as a party, for example, pursuant to

10       Federal Rule of Civil Procedure 19A2I.  Further, part 1

11       of the declaratory justiciability test for patent rights

12       requires action by the patent owner by creating

13       reasonable apprehension on the part of the declaratory

14       plaintiff that it will face an infringement suit.  A suit

15       filed against a different party, even if TCI California

16       could potentially be required to indemnify that party, is

17       not a suit that TCI California itself faces.  Therefore,

18       the District Court correctly determined that it lacked

19       subject matter jurisdiction, despite TCI California's

20       indemnity concerns.

21                So I believe this case pretty much stands for

22       the proposition that there is no case or controversy

23       simply because the plaintiffs are worried about suits

24       against their affiliates.  What this case says, if we

25       sued their affiliates, it would not create a case or

1    controversy as to them.  So I think this is pretty good

2    Federal Circuit authority for that.

3         I can also tell you that we don't understand the

4    allegations of Mr. Ware and others that they are deeply

5    concerned that we're going to file a lawsuit tomorrow or

6    the next day or the next day on the '275 patent against

7    their members of their corporate family.  I think we've

8    done everything to communicate that the last place we

9    want to be right now is anywhere in court until the

10   Patent Office finishes its job.  The Patent Office

11   decided it wants to reexamine the patent.  We filed an

12   application for reissue.  It is Columbia's desire not to

13   be in litigation over the '275 patent until that process

14   is over.  And even then, we would have to think hard

15   about whether or not there will be any enforcement

16   actions against anybody.  Have to see what the claims

17   look like.  Have to see if products were covered by them.

18        And keep in mind, for those companies that don't

19   have licenses, we have an obligation that plaintiffs made

20   clear in their papers that we have to approach companies

21   and offer them a license at a reasonable rate.  We do not

22   have permission to simply go out and file an infringement

23   action against anybody.

24        THE COURT:  Well, who's here who doesn't have a

25   license?  You're talking about the third parties.

1      MR. GINDLER:  Exactly, I'm talking about the

2   third parties.

3      So the affiliates, I really don't understand the

4   argument.  And what I said about Columbia desires not to

5   be in litigation until the '275 patent -- don't want to

6   be in litigation while the Patent Office is reviewing the

7   patent, I said it on September 9 in our telephonic

8   hearing.  I made that very clear.  And so for Biogen Idec

9   to say that it had a reasonable apprehension of anything

10  is pretty hard to believe.  We've had no communication,

11  as far as I know, ever with that company, whether it was

12  called Idec Pharmaceuticals or Biogen.  And they cite

13  none, by the way, in their complaint.

14      THE COURT:  And that's the other case.

15      MR. GINDLER:  That's the other case.

16      Now your Honor also asked  --

17      THE COURT:  Just to make sure I understand this,

18  and you're refreshing my recollection, and I think I

19  wrote about this in my preliminary injunction decision.

20  Columbia would have to offer Idec a license on reasonable

21  terms or something to that effect before it could bring

22  suit?

23      MR. GINDLER:  Absolutely.  We have that

24  obligation.

25      THE COURT:  That's through the NIH agreement?

1          MR. GINDLER:  We are required to do that because

2     this patent was procured with funding, the reason it was

3     funded by the government.  And the trade-off with the

4     government is, that's great, you get the patent, but you

5     must license it under these simple terms.

6          THE COURT:  Is the Axler who won the Noble Prize

7     the Axler who participated in this?

8          MR. GINDLER:  You know, I'm so glad you asked me

9     that question.

10          (Laughter.)

11          THE COURT:  We've been doing this for several

12     months.  I finally asked you a question that you liked.

13     Go ahead.

14          MR. GINDLER:  You know, so far, today is my

15     favorite day in court.

16          THE COURT:  Well, you've made your day with your

17     answer, so far, with your answer to the first question.

18          MR. GINDLER:  I understand.  Yes, it is the same

19     Richard Axel.

20          You asked us to consider the question of whether

21     or not the court should exercise its discretion not to

22     hear declaratory relief claims.  And you cited to us a

23     number of cases that you thought might be relevant.  And

24     we read those cases.

25          THE COURT:  There may be much better cases.  Two