# EXHIBIT J

DEPARTMENT OF P⸻TH & HUMAN SERVICES                      Public Health Service

Our Reference: G-122-80

Office of the Assistant Secre
for Health
Washington DC 20201

Office of the
General Counsel
Columbia University

MAR 13 1981

RECEIVED

FEB 24 1981

Mr. Paul A. Marks
Vice President for Health Sciences
The Trustees of Columbia University
New York, NY 10027

Dear Mr. Marks:

Reference is made to an invention entitled "Processes for Inserting DNA
Into Eucaryotic Cells and for Producing Proteinaceous Materials," which
was developed by Richard Axel, Michael H. Wigler, and Saul J. Silverstein
with support from National Institutes of Health research grants Nos.
CA-23767 and CA-16346.  Reference is also made to the petition of April 4,
1980 requesting that Columbia University (sometimes hereinafter referred
to as the "University") be permitted to retain and administer the principal
rights in this invention.  We understand that Patent Application Serial
No. 124,513 was filed February 25, 1980 on this invention.

In considering the request for a determination under Section 8.2(b) of the
Department of Health and Human Services (HHS) regulations, the case has been
evaluated to determine whether it is consistent with 41 C.F.R. 1-9.109-6 of
the Federal Procurement Regulations, with Section 8.1(a) of the HHS
regulations (45 C.F.R., Parts 6 and 8), more specifically with Section 8.2(b),
and with the intent of the Presidents' Statements and Memoranda on Government
Patent Policy (36 FR 16887, August 26, 1971, and 28 FR 10943, October 12,
1963).  Consideration has also been given to whether the invention will be
more adequately and quickly developed for widest use if it is assigned to
Columbia University for development and administration.

Your petition for title to the invention has been granted, but your request
for authority to grant an exclusive license without further review is hereby
denied.  In addition, your request that the nonexclusive, irrevocable,
royalty-free license for the government apply only to the United States
Government, except in those cases where state and local governments are
acting as contractors to the United States Government, or require the
invention to fulfill some Federally imposed requirement, is denied.  Also,
your request that whether or not an applicant for a nonexclusive license

Page 2 - Mr. Paul A. Marks

after a period of exclusivity to another licensee expires is "qualified"
be determined by joint agreement of Columbia and the Depatment of Health and
Human Services, is denied. Columbia University may make this determination
without consultation with this Department.

It will be necessary for Columbia University to submit any potential
exclusive license to us for review and approval, with a justification
showing the need for exclusive licensing, and the steps taken by the
University to attempt to license on a nonexclusive basis.

Consistent with the regulations cited supra, it is my determination that:

1.    The public interest will be best served by the expeditious
development of the invention described in the United States patent
application Serial No. 124,513 (hereinafter sometimes referred to as
"the patent application").

Review indicates that development is necessary to advance the invention
to the point of practical application and meet Food and Drug Admini-
stration approval. Such development shall include establishing and
equipping an appropriate laboratory; identifying and cloning eucaryotic
cells; preparing biologically significant materials using the process of
the invention; and preparing, isolating, and characterizing biologically
significant materials produced using the process of the invention.
Clinical studies will have to be done on animals and humans to test the
purity of material produced by the process. The process will have to be
scaled up for producing material to commercially useful quantities.
Data will have to be compiled; personnel educated; seminars conducted;
publicity arranged for; packaging developed; and production initiated.

2.    To encourage the above development, all right, title and interest
in the invention is hereby left to the University for development and
administration, subject to the following terms and conditions:

    (a)    The inventors, Richard Axel, Michael H. Wigler, and Saul J.
    Silverstein shall assign all of their rights in the invention,
    including their rights in the patent application, to the University.
    The assignment under the patent application shall be recorded by
    the University in the United States Patent and Trademark Office,
    and copies thereof shall be furnished to this office.

    (b)    The University shall not assign its U.S. patent rights in
    the invention to parties other than the United States Government,
    except that it may assign such rights in the invention to a
    patent management organization provided that the patent admini-
    stration agreement between such organization and the University
    is approved by the HHS. Any reference in this determination to

Page 3 - Mr. Paul A. Marks

the University shall also include such patent management organi-
zation when applicable and any assignment to such an organization
shall be subject to all the terms and conditions of this deter-
mination.

(c) The determination of whether or not patent application
shall be filed in foreign countries is left to the discretion
of the University. Foreign patent rights may be licensed or
assigned by the University to any party of its choice. However,
any exclusive license or assignment of foreign patent rights to
such party shall include a provision for royalty payments to the
University based on foreign sales related to such license or
assignment, and, provided that such party has a license or right
to market in the United States, a provision for nonexclusive
licensing in the country covered by the licensed or assigned
rights on the basis of not having made the invention available
in the United States within a reasonable time after marketing
abroad.

In the event that such party has a license or right to market in
the United States, such party shall agree to grant nonexclusive
licenses or sublicenses for marketing rights in the invention
outside the United States, as directed by the United States
Government.

    (1) if that party is marketing a product embodying the
    invention outside the United States for at least 2 years
    and

        (a) such product is not then being marketed in
        the United States, or

        (b) if required, Food and Drug Administration
        approval for marketing in the United States
        is not being actively pursued, or

    (2) if that party is marketing a product embodying the
    invention outside the United States for at least 2 years
    from the date the product has Food and Drug Administration
    approval for marketing in the United States, and such product
    is not then being marketed in the United States.

(d) The University shall grant to the Government of the United
States (including any agency thereof, State, or domestic muncipal
government) a nonexclusive, irrevocable, royalty-free license for
governmental purposes, and on behalf of any foreign government
pursuant to any existing or future treaty or agreement with the

Page 4 - Mr. Paul A. Marks

United States under each United States or foreign patent applica-
tion filed. The form of license to be granted under each patent
application is enclosed.

(e) The University shall provide written annual reports to the
HHS commencing 1 year from the date of this Agreement regarding
the development and commercial use that is being made and is
intended to be made of the invention, including the amounts and
source of money expended in such development and such other data
and information as the HHS may specify. After the first commercial
sale of any product embodying the invention, such report shall
specify the date of the first commercial sale and shall include
information relating to gross sales by licensees, and gross
royalties received by the University.

(f) In regard to the U.S. patent application, the University
agrees that if it or its licensee has not taken effective steps
within 3 years after a patent issues on the invention to bring
the invention to the point of practical application, or has not
made the invention available for licensing royalty-free or on
terms that are reasonable in the circumstances, or cannot show
cause why it should retain all right, title, and interest for a
further period of time, the HHS shall have the right to require
(1) assignment of the invention and the U.S. patent to the United
States; (2) cancellation of any outstanding exclusive licenses;
and/or (3) the granting of licenses to an applicant on a non-
exclusive, royalty-free basis or on terms that are reasonable in
the circumstances.

(g) In regard to the United States patent application, the HHS
reserves the right to license or to require the granting of a
nonexclusive or exclusive license to a responsible applicant or
applicants to practice the invention on terms that are reasonable
in the circumstances, if the University and/or any of its
licensees fail to comply with any of the provisions of this
determination, or if the HHS determines that the public health,
safety, or welfare requires the issuance of such licenses, or
that the public interest would otherwise suffer unless such
licenses were granted.

The University and its licensee shall be given written notice of
any proposed determination pursuant to the provisions of this
paragraph not less than thirty (30) days prior to the effective
date of such determination and, if requested, shall be granted a
hearing before the determination is put into effect.

(h) The University shall use all reasonable effort to bring the
invention to the commercial market through licensing on a non-
exclusive, royalty-free or reasonable royalty basis. However,

Page 5 - Mr. Paul A. Marks

exclusive licenses may be granted after reasonable efforts have
been made to license on a nonexclusive basis, or where the
University has determined that an exclusive license is necessary
as an incentive for development of the invention, or where market
conditions are such as to require exclusive licensing.

(i)  Any exclusive license granted by the University under
the U.S. patent application to a qualified manufacturer for
research, development, and marketing shall be for a limited
period of time, and in no event shall the period be longer than
five (5) years from the date of the first commercial sale in
the United States of products embodying said invention, or ten (10)
years from the date of the exclusive license, whichever occurs
first, provided that the licensee shall use all reasonable effort
to effect introduction into the commercial market as soon as
practicable, consistent with sound and reasonable business prac-
tices and judgment.

Any extension of the maximum five (5)-year period of exclusivity
shall be subject to the approval of the HHS.  Any request for
such an extension shall be considered on its merits upon written
request and justification, it being understood that, upon expira-
tion of the period of exclusivity or any extension thereof, any
license thereafter shall be granted to all competent and properly
qualified applicants either royalty-free or at a uniform rate to
all licensees, and not in excess of the royalty rate of the
previously granted exclusive license.

Unless otherwise provided in this determination, nothing herein
shall be construed as a requirement that the University obtain
the agreement from any of its licensees to license its improvement
inventions or technical data to subsequent licensees.

(j)  Any license granted by the University under the U.S.
patent application shall include adequate safeguards against
unreasonable royalties and repressive practices.  Royalties
shall not in any event be in excess of normal trade practice.
Such license shall also provide that all sales to the U.S.
Government shall be royalty-free.

Should the subject matter of the invention be of sufficient interest
to the National Cancer Institute of the National Institutes of
Health that it decides to pursue the material further and to sponsor
clinical studies, such license shall also contain a provision that
the licensee supply to the National Cancer Institute any material
needed for such preclinical and clinical studies at no cost to the
Government, subject to negotiation in special circumstances.

Page 6 - Mr. Paul A. Marks

(k) If permitted by its patent policies, and the terms of the grant or award under which the invention was made, the University may share royalties received with the inventors provided that the University shall not pay the inventors more than (1) fifty percent (50%) of the first $3,000 gross royalty paid under any license granted under (h) or (i) above; (2) twenty-five percent (25%) of the gross royalty income between $3,000 and $13,000; and (3) fifteen percent (15%) of the gross royalty in excess of $13,000. The balance of the royalty income, after payment of expenses incident to the administration of the invention, shall be utilized for the support of educational and research pursuits.

(l) All licenses issued by the University shall be subject to the conditions of this determination, and shall specifically incorporate by reference all applicable provisions contained herein. The University shall promptly furnish copies of any license agreements entered into by it to the HHS.

(m) The University shall upon request grant a power of attorney authorizing the HHS to inspect and make copies of any documents in the United States Patent and Trademark Office pertaining to the prosecution of the U.S. patent application.

(n) The University shall not abandon the patent application without first offering to transfer all rights in and to such application to the United States Government as represented by the Secretary, HHS not less than forty-five (45) days prior to the date a reply to a Patent and Trademark Office action is due. If the Government does not request assignment within thirty (30) days of receipt of this offer, the University may permit the application to go abandoned.

(o) Any United States patent application filed by the grantee institution shall include the following statement in the first paragraph of the specification following the abstract:

"The invention described herein was made in the course of work under a grant or award from the Department of Health and Human Services." If the application does not now contain this statement, please request the Patent and Trademark Office to amend the application, and furnish this office with a copy of your request.

If the foregoing determination is acceptable to Columbia University, we request that such acceptance be indicated in the space provided below, and that a signed copy be returned to the Patent Branch, Office of the General Counsel, c/o National Institutes of Health, Room 5A03, Westwood Building, Bethesda, Maryland 20205. This determination will become

effective upon receipt of the signed copy. Executed copies of the appro-
priate assignments nd licenses required by th s determination should be
submitted to the Patent Branch as soon as possible.

Sincerely yours,

/s/ Charles Miller

Assistant Secretary for Health


Accepted: COLUMBIA UNIVERSITY

By: _Robert I Levy_

Type Name: Dr. Robert I. Levy.

Title: Vice President for Health Sc:

Date: _October 5, 1983_


Enclosure

cc: Dr. Axel
    Dr. Wigler
    Dr. Silverstein