# TAB 10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BIOGEN, INC., GENZYME CORPORATION, and ABBOTT BIORESEARCH CENTER, INC.<br><br>Plaintiffs,<br><br>v.<br><br>THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,<br><br>Defendant. | Civil Action No. 03-11329-MLW<br><br>Part of MDL No. 1592 (MLW) |

**DEFENDANT COLUMBIA UNIVERSITY'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION BY PLAINTIFFS BIOGEN, INC. AND GENZYME CORP. FOR A PRELIMINARY INJUNCTION**

Dated: May 5, 2004

Thomas F. Maffei (BBO # 313220)
Scott McConchie (BBO # 634127)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA 02210-2600
(617) 542-9900
(617) 542-0900 (fax)

Morgan Chu
David I. Gindler
Jason G. Sheasby
Irell & Manella LLP
1800 Ave of the Stars, Suite 900
Los Angeles, CA 90067
(310) 203-7000
(310) 203-7199 (fax)

ATTORNEYS FOR THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK

1122962

More recent Federal Circuit authority makes clear that licensees, such as plaintiffs, are not entitled to keep their licenses in force while challenging the validity of the licensed patent. In *Gen-Probe Inc. v. Vysis, Inc.*, 359 F.3d 1376 (Fed. Cir. 2004), the Federal Circuit held that a licensee who continued to pay the required royalties for the purpose of keeping its license agreement in force while challenging the validity of the licensed patent did not have a "reasonable apprehension of suit" for patent infringement and, accordingly, did not have standing to assert a claim under the Declaratory Judgment Act. *Id.* at 1382. The Federal Circuit concluded that it would yield "undesirable results" to allow a licensee to challenge the validity of the licensed patent without facing the risk of a counterclaim for patent infringement. The court explained that, without this apprehension of suit, "the licensor would bear all of the risk, while the licensee would benefit from the license's effective cap on damages or royalties in the event that its challenge to the patent's scope or validity fails." *Id.*

Plaintiffs want exactly what the Federal Circuit refused to do in *Gen-Probe*: Transfer all of the litigation risk to the licensor. They do not want to face the risk of damages in excess of the royalty rates in their license agreements, or of treble damages for willful infringement, or of an injunction preventing use of the inventions claimed in the '275 patent. They want an injunction to guarantee that, win or lose, they will be in no worse position than the day on which they filed suit. Their requested relief thus directly conflicts with the central premise of *Gen-Probe*: To ensure the proper allocation of risk between licensee and licensor, a licensee cannot challenge the validity of a licensed patent unless it has a reasonable apprehension of being sued by the licensor for patent infringement. Plaintiffs' motion takes away that apprehension of suit. For this additional reason, plaintiffs' motion should be denied.

to prevent a mere possibility of injury, even where prospective injury is great." *Id.* (quotation omitted).

Plaintiffs fail to cite a single case where any court has issued a preliminary injunction preventing a patent owner from terminating a licensee who has failed to pay the required royalties under the parties' agreement on the ground that the licensed patent is invalid or unenforceable. This is hardly surprising, for *Cordis I* makes clear that a licensee has no right under *Lear* to obtain any such relief. Indeed, as the court held in *Cordis I*, not even the potential exposure to a patent infringement suit or inability to manufacture and sell infringing products will override the licensor's contractual right to terminate a licensee who has failed to pay the required royalties during its challenge to the validity of the licensed patent.

Here, Columbia has taken no action against plaintiffs other than to exercise its contractual right to terminate their license agreements for non-payment of royalties. While Columbia has the right to assert counterclaims for patent infringement and, if warranted, seek injunctive relief, Columbia cannot stop plaintiffs from selling their products. Only the Court can do that. When and if Columbia ever files a motion seeking injunctive relief against plaintiffs, this Court can decide (on the specific facts then existing) whether enjoining the sale of plaintiffs' products is an irreparable harm. As of now, all that exists is "a mere possibility of . . . prospective injury," which is not sufficient to justify an injunction. *Cordis I*, 780 F.2d at 996; *see also In re Rare Coin* Galleries *of Am., Inc.*, 862 F.2d 896, 902 (1st Cir. 1988) ("Speculation or unsubstantiated fears of what may happen in the future cannot provide the basis for a preliminary injunction.").

could not challenge the validity of the licensed patent while it was a licensee in good standing. *Id.* at 1382.

The court considered whether it was unfair to force Gen-Probe to choose between retaining its license and suing to invalidate the licensed patent. Biogen and Genzyme describe this as the "surreal situation" that they presently face. Plaintiffs' Brief at 35. The Federal Circuit decided that it was not unfair. The court concluded that allowing a licensee to challenge the licensed patent and maintain its license yielded "undesirable results":

> Vysis voluntarily relinquished its statutory right to exclude by granting Gen-Probe a nonexclusive license. In so doing, Vysis chose to avoid litigation as an avenue of enforcing its rights. Allowing this action to proceed would effectively defeat those contractual covenants and discourage patentees from granting licenses. In other words, in this situation, the licensor would bear all the risk, while licensee would benefit from the license's effective cap on damages or royalties in the event its challenge to the patent's scope or validity fails.

359 F.3d at 1382.

Plaintiffs want exactly what Gen-Probe sought. They want to keep their license agreements as an insurance policy against their inability to invalidate the '275 patent. They want to shift all of the burden of this litigation onto Columbia's shoulders. At present, each side bears risk equally in the litigation. Columbia faces the risk that the Court will invalidate the '275 patent. Plaintiffs face the risk that Columbia will sue them for patent infringement. Plaintiffs' motion upsets this balance. If the Court were to enjoin Columbia from exercising its contractual right to terminate the license agreements on account of plaintiffs' failure to pay the required royalties, plaintiffs would no longer face the risk of an infringement suit, thereby making Columbia the only party exposed to any risk in the litigation. The Federal Circuit concluded that shifting all of the risk to the patent owner is "undesirable" as a matter of public policy. While Biogen and Genzyme may elect to

Finally, plaintiffs have no basis to contend that Columbia has waived its right to terminate the license agreements. Under New York law, waiver is "an intentional relinquishment of a known right and should not be lightly presumed." *Gilbert Frank Corp. v. Federal Ins. Co.*, 70 N.Y.2d 966, 968 (N.Y. 1988). In *Gilbert Frank*, settlement negotiations after expiry of a contractual limitations period was not "evidence from which a clear manifestation of intent . . . to relinquish the protection of [that limitations period] could be reasonably inferred." *Id.* Moreover, "[m]ere delay, passivity or even somnolence is not in itself a surrender of rights." 57 N.Y. Jur. 2d Estoppel, Ratification, and Waiver § 81. Thus, a delay in seeking execution of a legal judgment is not waiver, because waiver "will not be inferred from mere silence or inaction." *Andrews v. Dolan*, 551 N.Y.S.2d 538, 539 (App. Div. 1999). *Accord Agati v. Agati*, 461 N.Y.S.2d 95, 96 (App. Div. 1983). Plaintiffs cite no evidence that Columbia intended to waive its rights. Indeed, to the contrary, Columbia explicitly informed plaintiffs that they were required to pay royalties under the '275 patent. Ex. E at 23; Ex. F at 24; Ex. G at 25. Columbia's position was so clear to plaintiffs that their declaratory judgment complaint alleges that Columbia's demand for royalties on the '275 patent created a live controversy that requires judicial resolution. Plaintiffs' Amended Complaint, ¶¶ 4, 36.[7]

---

[7] The cases plaintiffs cite on waiver are inapplicable because they involve a party who affirmatively accepted the benefits of a contract, waited a long time, and then attempted to terminate on the basis of alleged defects in performance of which the party had been aware. *1602 Ave. Y, Inc. v. Markowitz*, 711 N.Y.S.2d 473, 474 (App. Div. 2000); *Savasta v. 470 Newport Assoc.*, 579 N.Y.S.2d 167, 169 (App. Div. 1992). Columbia has not accepted any payments or other benefits relating to the '275 patent from plaintiffs.