# TAB 14

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE COLUMBIA UNIVERSITY PATENT LITIGATION | MDL No. 1592 (MLW)<br><br>This Document Relates To All Actions |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF COLUMBIA UNIVERSITY'S MOTION TO STAY LITIGATION PENDING CONCLUSION OF REEXAMINATION AND REISSUE PROCEEDINGS IN THE PATENT AND TRADEMARK OFFICE**

Dated: June 18, 2004

Thomas F. Maffei (BBO # 313220)
Scott McConchie (BBO # 634127)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA  02210-2600
(617) 542-9900
(617) 542-0900 (fax)

Morgan Chu
David I. Gindler
Jason G. Sheasby
Irell & Manella LLP
1800 Ave of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010
(310) 203-7199 (fax)

Wayne M. Barsky
Kevin S. Rosen
Gibson, Dunn & Crutcher LLP
2029 Century Park East
Los Angeles, California
90067-3026
(310) 552-8500
(310) 551-8741 (fax)

ATTORNEYS FOR THE TRUSTEES
OF COLUMBIA UNIVERSITY IN
THE CITY OF NEW YORK

1140485

litigating over issues that will ultimately be rendered moot by the PTO's findings."). That approach should be followed here.[5]

C. **Plaintiffs Will Not Suffer Any Prejudice Or Clear Tactical Disadvantage From The Granting Of A Stay**

As established in Columbia's moving papers, plaintiffs will incur no increased financial liability to Columbia from the granting of a stay: If plaintiffs prevail, their royalty liability ceases as of the date on which they filed their respective actions (assuming that they stopped paying royalties by that date). On the other hand, if Columbia prevails, plaintiffs' exposure to the '275 patent will continue until 2019, irrespective of the date of the judgment. Accordingly, there is no basis for Wyeth to argue that, as a *quid quo pro* for the granting of a stay, Columbia should waive its right to recover infringement damages that would otherwise accrue, or to pursue infringement claims against products in development, during the period

---

[5] Some of the plaintiffs argue that "courts generally deny stays" in declaratory relief actions. Joint Mem. Opp. at 17. This is simply untrue. *See, e.g., Implant Innovations, Inc. v. Nobelpharma AB*, No. 93-C-7489, 1994 WL 68498, at *3-4 (N.D. Ill. Feb. 25, 1994) (staying declaratory judgment action and rejecting argument that "stay puts a 'larger and larger cloud' over [3I's] head because it keeps accumulating potential damages"). None of the cases that plaintiffs cite contains any such statement or even remotely supports this conclusion. Two of the cases denied stay motions because considerable discovery had already occurred. *See Arctic Cat, Inc. v. Injection Research Specialists, Inc.*, No. Civ. 01-543 MJDRLE, 2003 WL 22047872, at *2 (D. Minn. Aug. 29, 2003) (case had been underway for nearly two years with "significant" exchange of discovery); *Enprotech Corp. v. Autotech Corp.*, No. 88 C 4853, 1990 WL 37217, at *1 (Mar. 16, 1990) ("[m]ost compelling" reason to deny stay was that discovery was "almost completed" and trial was less than two months away). A third case, *American Ceramicraft, Inc. v. Eisenbraun Reiss Inc.*, Civ. No. 92-2851, 1993 WL 498863, at *21 (D.N.J. June 16, 1993), had proceeded sufficiently to enable the court to enter summary adjudication on the plaintiffs' invalidity claims. The final cited case, *Yates-American Machine Co., Inc. v. Newman Machine Co., Inc.*, 694 F. Supp. 155, 158 (M.D.N.C. 1988), involved a decision not to stay a challenge to three patents where only one of them was in a reissue proceeding.

of the stay. The granting of a stay is simply irrelevant to plaintiffs' exposure under the '275 patent.[6]

The principal argument advanced by all plaintiffs is that they would be prejudiced by a stay because their potential liability under the '275 patent may cause them to defer the development of future products or to raise the prices of existing products. This argument is outrageous and unsupportable hyperbole. Not one of the plaintiffs has attempted to support this argument with even the slightest bit of evidence. There are no witness affidavits, no manufacturing reports, no customer surveys, no expert analyses. Nor have plaintiffs offered any evidence that the royalties paid to Columbia in the past years for sales of products covered by the three previous Axel patents—on average, one percent of net sales of those products—caused them to increase prices or explore alternative manufacturing processes. It simply defies credulity to believe that a stay of this case will affect the development and delivery of pharmaceutical products from these multi-billion dollar companies. In short, lacking any basis to claim real prejudice from the granting of a stay, plaintiffs have invented one out of thin air.

---

[6] In addition, contrary to plaintiffs' suggestions, their right to participate in the PTO is meaningful and substantial. Each plaintiff will be able to file a protest. MPEP § 1441.01, at 1400-48 (Ex. 10). In addition, plaintiffs can submit any evidence they want in support of their protests. MPEP § 1901.02, at 1900-2 ("Protests may be based on any facts or information adverse to patentability. The content and substance of the protest are more important than whether prior art documents, or some other form of evidence adverse to patentability, are being relied on.") (Ex. 10); § 1901.03, at 1900-4 (contemplating that a protester may file an "affidavit, or declaration") (Ex. 10). Given their numbers, plaintiffs should have ample opportunities to file all the protests necessary to apprise the PTO of the information they believe relevant.