# TAB 15

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE COLUMBIA UNIVERSITY<br>PATENT LITIGATION | MDL No. 1592 (MLW)<br><br>This Document Relates To All Actions |

**COLUMBIA UNIVERSITY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING CONCLUSION OF REEXAMINATION AND REISSUE PROCEEDINGS IN THE PATENT AND TRADEMARK OFFICE**

Thomas F. Maffei (BBO # 313220)
Scott McConchie (BBO # 634127)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA  02210-2600
(617) 542-9900
(617) 542-0900 (fax)

Morgan Chu
David I. Gindler
Jason G. Sheasby
Irell & Manella LLP
1800 Ave of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010
(310) 203-7199 (fax)

Wayne M. Barsky
Kevin S. Rosen
Gibson, Dunn & Crutcher LLP
2029 Century Park East
Los Angeles, California
90067-3026
(310) 552-8500
(310) 551-8741 (fax)

ATTORNEYS FOR THE TRUSTEES
OF COLUMBIA UNIVERSITY IN
THE CITY OF NEW YORK

'275 patent to the fullest extent—just as it would upon original examination of a patent application. Accordingly, given the potential of reexamination and reissue to result in substantial changes to the '275 patent—whether by amendment to or cancellation of one or more claims of the patent—a stay is appropriate to allow the PTO to determine the validity and scope of the patent's claims prior to extensive litigation in this Court.

Allowing the PTO to apply its specialized expertise prior to litigation has the potential to simplify the issues dramatically. During the stay, the PTO will have the opportunity to determine the proper scope (and number) of claims in the '275 patent and to express its expert views on the fundamental issues at stake in these cases. Accordingly, a stay at this stage will allow for a fresh start of these actions based on whatever claims of the '275 patent emerge from the PTO. Without a stay, the parties will engage in duplicative litigation of the very issues that the PTO will consider during the reexamination and reissue proceedings.

Moreover, a stay of these actions poses no threat of prejudice to plaintiffs. None of the cases has progressed in any meaningful way beyond the pleading stage. Other than some very limited discovery (all of it produced by Columbia) and the exchange of some initial disclosures, there has been no activity in any of these actions. There is no scheduling order entered or trial date set. Indeed, it is the *absence* of a stay that poses a real threat of prejudice to plaintiffs, for if these actions proceed apace, plaintiffs will unnecessarily risk exposure to any counterclaims that Columbia may assert for infringement of the '275 patent. To conserve judicial resources and avoid wasteful duplication of effort, Columbia respectfully requests that the Court enter a stay of this action until the conclusion of proceedings before the PTO.

(when a claim survives the reexamination proceeding)"). This factor strongly supports the granting of a stay.

The meaning of the claims in the '275 patent will be a fundamental issue in this case. Plaintiffs' double-patenting allegations turn on the interpretation of the patent claims. *Eli Lilly & Co. v. Barr Labs.*, Inc., 251 F.3d 955, 968 (Fed. Cir. 2001) ("Generally, an obviousness-type double patenting analysis entails two steps. First, as a matter of law, a court construes the claim[s] . . ."). The same is true of plaintiffs' allegations that the '275 patent is invalid under 35 U.S.C. §§ 101, 102, 103, and 112. *Akami Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003) ("The first step in any invalidity analysis is claim construction. . .").[6] Similarly, Amgen's claim for a declaration of non-infringement, as well as any counterclaims that Columbia may assert for infringement of the '275 patent, also turn upon the interpretation of the '275 patent. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) ("An infringement analysis involves two steps. First, the court determines the scope and meaning of the patent claims asserted . . ."). Given that claim interpretation will play a central role in this litigation, it makes no sense to proceed with these six related actions when it is entirely possible that some or all of the claims of the '275 patent may be amended as a result of reexamination or reissue. *E.g., Vitronics Corp. v. Conceptronic, Inc.*, 36 F. Supp. 2d 440, 442 (D.N.H. 1997) ("The reexamination process could more precisely define the scope of claim 1, or it could leave claim 1 unchanged. Because determining the scope of the disputed claim is central to

---

[6] See also *AK Steel Corp. v. Sollac and Ugine*, 344 F.3d 1234, 1241 (Fed. Cir. 2003) ("an enablement [35 U.S.C. § 112 validity] inquiry typically begins with a construction of the claims"); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000) ("The first step of an anticipation analysis is claim construction."); *In re Goodman*, 11 F.3d 1046, 1052 (Fed. Cir. 1993) (35 U.S.C. § 101 double-patenting "hinges upon the scope of the claims in question. If the claimed inventions are identical in scope, the proper rejection is under 35 U.S.C. § 101 . . .") (internal citation omitted).

Columbia while challenging the validity of the '275 patent. *Id.* at 673 ("federal policies would be significantly frustrated if licensees could be required to continue to pay royalties during the time they are challenging patent validity in the courts."). Accordingly, if plaintiffs prevail in the litigation, the date of judgment is irrelevant because they will owe no royalties to Columbia from the date on which they filed their respective actions (assuming they stopped paying royalties under the '275 patent by that date). On the other hand, if Columbia prevails in the litigation, the date of judgment is irrelevant because the '275 patent will remain in force until 2019.

Nor will a stay create a clear tactical disadvantage for plaintiffs. Quite to the contrary, a stay may limit plaintiffs' exposure in connection with any counterclaims for infringement of the '275 patent that Columbia may assert. In particular, a stay at this stage would protect plaintiffs from the possibility that Columbia will secure a judgment of patent infringement and an award of damages for which plaintiffs would be liable even if the PTO later determined that the '275 patent is invalid. *See Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 952 (W.D.N.Y. 1996) ("If this Court finds that [the patent] is not invalid and that Alcon has infringed it, and orders Alcon to pay damages to B&L for such infringement, then Alcon would have no ability to recover those damages if at a later date the PTO determined that the . . . patent is invalid").

Moreover, a stay would also benefit plaintiffs because their potential liability for infringement of the '275 patent may be limited if the claims of the '275 patent are amended as a result of the reexamination or reissue process. Under the continuity doctrine, if an amended claim of a reissued or reexamined patent is not "substantially identical" to an original claim of that patent, then the patent holder cannot seek damages for any infringement of the amended claim that occurred before the date on which the patent

emerged from reissue or reexamination. 35 U.S.C. § 252 ("the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent."); 35 U.S.C. § 307 (applying 35 U.S.C. § 252 to reexamination proceedings). Accordingly, plaintiffs' infringement liability could be significantly reduced if the '275 patent substantially changes as a result of reissue or reexamination. *See Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) ("If substantive changes have been made to the original claims, the patentee is entitled to infringement damages only for the period following the issuance of the reexamination certificate.").

Finally, a stay of this litigation will result in expedited examination by the PTO—a tactical *benefit* to all parties. The Manual of Patent Examining Procedure provides that "reissue applications involved in 'stayed litigation' will be taken up for action in advance of other reissue applications. Great emphasis is placed on the expedited processing of such reissue applications." MPEP § 1442.03. The PTO also accelerates reexamination when the patent at issue is involved in stayed litigation. MPEP § 2263. Because reissue and reexamination proceedings will move forward regardless of whether this litigation is stayed, it is to the advantage of all parties to aid in expediting the PTO's evaluation of the patent at the center of these lawsuits.