UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BIOGEN IDEC INC., BIOGEN IDEC MA, INC. and GENZYME CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,<br><br>Defendant. | CIVIL ACTION No. 04-CV-12009-MLW |

**<u>SURREPLY IN OPPOSITION TO COLUMBIA'S PARTIAL MOTION TO DISMISS</u>**

In a 32-page reply memorandum that cites no fewer than 32 new cases, Columbia argues that Biogen Idec has not identified "any conduct by Columbia that would lead a reasonable person to conclude that Columbia plans to sue Biogen Idec for infringement of the '275 patent." (Reply at 4.)  On the contrary, an objectively reasonable party sitting in Biogen Idec's position on September 17, 2004, when the complaint was filed, would have feared – as Biogen Idec in fact did – that Columbia was going to sue Biogen Idec in its preferred forum of California and seek damages for infringement of the '275 patent.  While Columbia attempts to weigh each of its actions in isolation, the cumulative effect of its aggressive campaign to extract revenue from the '275 patent compels the conclusion that Biogen Idec's fears of suit were and are reasonable.

The question before the Court in connection with Columbia's Rule 12(b)(1) motion to dismiss Counts IV through VII for lack of subject matter jurisdiction is whether Biogen Idec has

a reasonable apprehension that Columbia will sue it for infringement of the '275 patent.[1] In arguing that there is no reasonable apprehension, Columbia relies mostly upon two factors that do not help it at all: (1) its covenant not to sue other parties, and (2) its alleged promise not to file suit until the conclusion of the PTO's reexamination of the '275 patent. Plaintiffs first respond to these red herrings, then turn to the pertinent question: whether Columbia's conduct has created in Biogen Idec a reasonable apprehension of suit sufficient to support the exercise of declaratory judgment jurisdiction.

**1.    Columbia Cannot Eliminate Biogen Idec's Reasonable Apprehension Of Suit By Covenanting Not To Sue Others.**

Neither the Covenant Not to Sue nor the Amended and Restated Covenant Not to Sue filed in *In re Columbia Univ. Patent Litigation*, No. 04-MDL-01592 (D. Mass.), can alleviate or eliminate Biogen Idec's reasonable apprehension of suit. Columbia expressly excluded Biogen Idec from its covenant. (Opp. Ex. Tab 3, at 2.) Nevertheless, in urging dismissal, Columbia repeatedly relies upon its covenant, and it seeks to dismiss as irrelevant any activities of Columbia that "pre-date the covenant not to sue." (Reply at 8; *see also id.* at 6-7 (arguing that covenant not to sue indicates that Columbia not planning to sue Biogen Idec); Opening Br. at 2 (arguing that Biogen Idec claims duplicate the claims of Biogen and Genzyme, "which were dismissed in light of the covenant not to sue").) Columbia cannot expressly exclude Biogen Idec from the covenant and then cite the covenant as evidence that Biogen Idec has no reasonable apprehension of suit.

If the totality of Columbia's conduct, as discussed below, created in Biogen Idec a reasonable apprehension of suit, this Court has jurisdiction to hear this declaratory judgment

---

[1] Columbia also moves to dismiss all but one of plaintiffs' state counts for failure to state a claim. Plaintiffs do not believe any surreply is necessary with respect to these counts.

action.  If anything, the care with which Columbia carved out affiliates such as Biogen Idec from a covenant that might otherwise have been expected to cover them serves to **heighten** Biogen Idec's apprehension of suit.  (Opp. Ex. Tab 3, at 2; Opp. Ex. Tab 2, at 1.)  *See BP Chems., Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed. Cir. 1993) (refusal to give assurances relevant to reasonable apprehension).  Columbia's carefully limited covenant certainly provides no solace to Biogen Idec.  In considering Columbia's motion, this Court should disregard all of Columbia's arguments based upon the covenant not to sue.  (*See, e.g.*, Opening Br. at 2; Reply at 6-7, 8.)

**2.     Columbia Cannot Eliminate Biogen Idec's Reasonable Apprehension Of Suit By Expressing A Desire To Postpone Litigation.**

Nor does Columbia's assertion that "it will not sue anyone during the pendency of reexamination and reissue proceedings in the PTO" reduce or eliminate Biogen Idec's reasonable apprehension of suit.  (Reply at 8; *see also id.* at 6 (claiming it is not "now poised to bring suit"); *id.* at 7 (touting "unequivocal commitment not to sue . . . while proceedings in the PTO are ongoing" and dismissing statements made before this "assurance"); Opening Br. at 10 (highlighting Columbia's desire not to litigate the '275 patent while it is under consideration by the PTO).)  Columbia does **not** propose to make a statement of non-liability, *cf. Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 637-38 (Fed. Cir. 1991), but merely avows a desire to delay suit until a time of its choosing, a time when Biogen Idec's potential liability will be even greater.[2]  Were this temporary reprieve from litigation sufficient to destroy jurisdiction, in every declaratory judgment case stayed at the patentee's request pending reexamination, the court would thereupon be required to dismiss for lack of subject matter jurisdiction.

---

[2] Columbia's repeated assertion that it has made "unequivocal and binding assurances" (Opening Br. at 13) not to sue until after the conclusion of reexamination proceedings is pure attorney argument that finds no support in the evidentiary record.

- 3 -

Plaintiffs have cited at least a dozen cases from the Supreme Court, the Federal Circuit, and other courts demonstrating that a patentee's intent to delay suit does not destroy declaratory judgment jurisdiction. (Opp. Br. at 9-12.) Strangely, Columbia claims that plaintiffs cited no authority on this point. (Reply at 10.) So that there can be no confusion, plaintiffs set these cases out again here.[3]

In the face of this precedent, Columbia insists that *Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324 (Fed. Cir. 2005), requires an "imminent suit" and that this rule has been "repeatedly affirmed" by the Federal Circuit. (Reply at 9.) Nonsense. The cases Columbia cites – *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) and *BP*

---

[3] *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 344 (1971) (manufacturer need not await the filing of an infringement action in order to test the validity of a competitor's patent under the Declaratory Judgment Act); *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346-47 (Fed. Cir. 2005) (promise not to sue while negotiating a license did not deprive plaintiff of the right to sue before negotiations concluded); *Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2002) ("appropriate inquiry asks whether [plaintiff] had a reasonable apprehension that [defendant] would sue it in the future"); *Fina Research, S.A. v. Baroid, Ltd.*, 141 F.3d 1479, 1484 (Fed. Cir. 1998) (reasonable apprehension is not destroyed by patentee's statement "disavowing" present intent to sue); *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996) (plaintiff "is not required to wait for the patentee to decide when and where to sue"); *Minn. Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 673 (Fed. Cir. 1991) ("*3M*") (declaratory judgment is intended to "prevent avoidable damages by a person uncertain of his rights and threatened with damage by delayed adjudication"); *Arrowhead Industrial Water, Inc. v. Ecolochem*, 846 F.2d 731, 733-34 (Fed. Cir. 1988) ("unrealistic to limit the required apprehension to one of imminent suit against plaintiff when defendant is exhibiting an intent to delay that suit"); *Goodyear Tire & Rubber Co. v. Releasomers*, 824 F.2d 953, 956 (Fed. Cir. 1987) (fact that patentee's president had not "at this particular moment authorized a patent infringement action" did not remove apprehension of suit); *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 876, 881 (Fed. Cir. 1983) (patentee's affidavit stating that it had no intention of terminating license and bringing suit insufficient to remove licensee's reasonable apprehension of suit); *Dewey & Almy Chem. Co. v. Am. Anode*, 137 F.2d 68, 69 (3d Cir. 1943) (noting that before the passage of the Declaratory Judgment Act, "the patentee might, in his own good time, sue the alleged infringer for an accounting, after large damages on account of a possible infringement had accrued"); *Glaxo Wellcome, Inc. v. Pharmadyne Corp.*, Civ. No. AMD-96-455, 1996 WL 432290, at *6-7 (D. Md. July 23, 1996) (statement that there were no current plans to bring suit did not divest the court of jurisdiction); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 760 F. Supp. 400, 407 (D. Del. 1991) (promise not to sue pending outcome of reexamination did not extinguish threat).

*Chemicals* – both confirm that the Constitution and the Declaratory Judgment Act require nothing more than an "actual controversy" and that this, in turn, requires a controversy of "sufficient immediacy and reality" to warrant a declaratory judgment, *Maryland Casualty*, 312 U.S. at 273, where the "need for judicial attention is real and immediate," *BP Chems.*, 4 F.3d at 978. The requirement is of a real and immediate **need** for judicial attention or a **controversy** of sufficient immediacy, not an "imminent suit." *See Arrowhead*, 846 F.2d at 733-34. Columbia's argument flatly contradicts decades of caselaw. *See* cases cited *supra* note 3. As Columbia acknowledges, the very purpose of the Declaratory Judgment Act is to allow one threatened with liability to resolve the controversy **without waiting** for the adversary to file suit. (Reply at 9-10.) The question is whether Biogen Idec is threatened with infringement liability, not whether Columbia has authorized its counsel to file suit. *See Goodyear*, 824 F.2d at 956.

Columbia also acknowledges, yet fails to respond to, the court's holding in *United Sweetener USA, Inc. v. Nutrasweet Co.*, 760 F. Supp. 400 (D. Del. 1991). As Columbia itself recites, in that case the patentee, Nutrasweet, "moved to dismiss United Sweetener's declaratory relief complaint after promising not to assert the patent-in-suit until the conclusion of reexamination proceedings in the PTO" (Reply at 3), precisely as Columbia attempts to do here. Columbia further explains that in that case "[t]he court denied the motion, finding that Nutrasweet's limited promise **did not vitiate the reasonable apprehension of suit** that already existed when the complaint was originally filed." (Reply at 3 (emphasis added).)

If Columbia's carefully circumscribed "assurance" does anything, it **heightens** Biogen Idec's apprehension of suit. The obvious implication of Columbia's purported promise not to "initiate infringement suits based on the '275 patent **while** the PTO is considering the reissue application and the reexamination petition" is that Columbia **will** "initiate infringement suits" as

- 5 -

soon as the PTO proceedings conclude. In considering Columbia's motion, this Court should give no weight to Columbia's so-called "assurance" not to bring suit until after conclusion of the reexamination.

**3.     Columbia's Conduct Has Created In Biogen Idec A Reasonable Apprehension Of Suit.**

When Columbia's arguments are stripped of its covenant not to sue others and its desire to postpone suit, Columbia presents only a feeble response to plaintiffs' showing that there is a controversy of sufficient immediacy and reality to require the exercise of declaratory judgment jurisdiction. *See Md. Cas.*, 312 U.S. at 273.

The relevant facts can be summarized as follows:[4] Although Columbia's lucrative patents on recombinant DNA technology expired in 2000, through its words and deeds Columbia made clear that it was not going to give up its royalty stream without a fight. Even before the expiration of its original patents in 2000, Columbia vigorously enforced its patents against unlicensed practice of its patented technology. (Opp. Br. at 4, 13 & n.6.) Even before the original patents expired, Columbia lobbied Congress for a patent term extension then, when that failed, directed its energy toward the PTO, from which it illegitimately obtained in 2002 a new patent with a new 17-year term. (Opp. Br. at 5.)

Issued more than twenty years after the patent application on which it was based, and at a time when the inventors had long ago moved on to other pursuits, the new '275 patent most

---

[4] The facts underlying Columbia's motion to dismiss for lack of subject matter jurisdiction are not seriously in dispute. Although Columbia argues that plaintiffs have not submitted sufficient evidence (Reply at 8), it has not previously disputed and cannot now dispute the underlying facts. *See, e.g.*, Opp. Ex. Tabs 21, 22 (Columbia's termination letters sent to Biogen and Genzyme); *In re Columbia Univ. Patent Litig.*, 343 F. Supp. 2d 35, 38 (D. Mass. 2004) (noting that "Columbia notified each plaintiff [to the multidistrict litigation] that it was terminating its license as a result of its refusal to pay royalties on the '275 patent"); *In re Columbia Univ. Patent Litig.*, 330 F. Supp. 2d 12, 17 (D. Mass. 2004) (Columbia seeking a broadening reissue of the '275 patent).

assuredly was not pursued for academic glory, but rather to use as leverage to secure additional revenue for the university. *In re Columbia Patent Litigation*, 332 F. Supp. 2d 286, 298 (D. Mass. 2004) (timing of '275 patent's issuance strongly suggests deliberate delay in order to increase commercial value by extending term of patent). Columbia then informed its licensees that they were required to recommence royalty payments in light of a patent that would not expire until 2019, and it terminated the licenses of those that refused to pay. (Opp. Ex. Tabs 21, 22.) Columbia filed claims against four of its licensees for failure to pay royalties and, when several licensees filed declaratory judgment complaints, threatened to counterclaim for infringement. (Opp. Br. at 5-6.)

As a marketing partner of one of Columbia's licensees and, as of 2003, the affiliate of another, Biogen Idec was acutely aware of these events and knew that it was equally at risk because it lacked a license from Columbia and had engaged in activity similar to that on which Columbia had demanded royalties and threatened infringement claims. (Stewart Decl. ¶¶ 7-8.) Biogen Idec knew, moreover, that the product it co-marketed with Genentech – Rituxan® – was at the center of the declaratory judgment litigation. (*Id.*)

Biogen Idec also knew that, when Columbia was faced with the likelihood that its '275 patent would not survive a court challenge, *In re Columbia Univ. Patent Litigation*, 332 F. Supp. 2d at 296-98, Columbia attempted to retain its leverage by moving to dismiss the court challenge while preserving its ability to seek damages under the '275 patent. Thus Columbia first covenanted not to sue only with respect to products that were on the market as of the date of the covenant. (Opp. Ex. Tab 1.) When it was subsequently forced to expand its covenant in order to obtain dismissal, it still refused to extend it to affiliates of the companies that had brought declaratory judgment complaints. (Opp. Ex. Tab 3.) Columbia also continued to incur

- 7 -

substantial legal fees to oppose the PTO reexamination of the '275 patent, an investment it would have no reason to make if it did not intend to enforce the '275 patent.

Biogen Idec was expressly excluded from each version of Columbia's covenant, along with all other affiliates of the named parties. If Biogen Idec was indeed liable for infringing a valid and enforceable patent, liability was compounding day by day. Once the liability of affiliates such as Biogen Idec had been raised in correspondence between the licensees and Columbia, and Columbia had highlighted Biogen Idec's product, Rituxan®, as an example of a product that would be subject to liability but for the covenant, Biogen Idec understandably believed that Columbia would seek to recoup the royalties foregone under the covenant by filing suit against affiliates lacking the protections of the covenant. (Opp. Br. at 15; Opp. Ex. Tab 2, at 1.)

These facts more than satisfy the threshold "actual controversy" required under the Declaratory Judgment Act. The Federal Circuit has recognized that jurisdiction does not require direct threats of suit, and may be based upon conduct such as actual or threatened suits against customers, lawsuits against manufacturers of similar products, and notices of infringement in trade journals. *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 876, 881 n.6 (Fed. Cir. 1983). In *Treemond Co. v. Schering Corp.*, 122 F.2d 702, 705 (3d. Cir. 1941), for example, jurisdiction was based upon a notice in a trade journal that the patentee held a patent on a particular product, of which the plaintiff was one manufacturer. In *Dewey & Almy*, 137 F.2d at 70-71, jurisdiction was based upon an infringement suit against another company under the same patents, and the assertion during that litigation of a scope for the patents that was broad enough to cover the plaintiff's activity.

Despite this longstanding precedent, Columbia relies on three new cases to argue that there can be no reasonable apprehension in the absence of direct contact between the patentee and the putative infringer. (Reply at 4–7 & n.1.) This misstates the law. "If the circumstances warrant, a reasonable apprehension may be found in the absence of any communication" from the patentee, and even "when a patentee first learns of [the declaratory judgment] plaintiff's conduct upon receipt of the complaint." *Arrowhead*, 846 F.2d at 736, 738 (citing *Dewey & Almy*, 137 F.2d at 71); *see also Treemond*, 122 F.2d at 705. Further, the combined effect of Columbia's conduct goes well beyond the conduct at issue in the new cases Columbia cites. *See West Interactive Corp. v. First Data Res., Inc.*, 972 F.2d 1295, 1296–98 (Fed. Cir. 1992) (prior infringement litigation and unauthorized third-hand statement that plaintiff was infringing); *Bausch & Lomb Inc. v. CIBA Corp.*, 39 F. Supp. 2d 271, 273 (W.D.N.Y. 1999) (rumors and second-hand statement that plaintiff would be sued for infringement); *Field Container Co. v. Somerville Packaging Corp.*, 842 F. Supp. 338, 341-42 (N.D. Ill. 1994) (statement regarding product plaintiff did not intend to manufacture).

Finally, if an Article III controversy exists, this Court may not simply decline to exercise declaratory judgment jurisdiction. Recent cases have held that in the absence of special circumstances not present here, it is reversible error to decline to exercise jurisdiction over an actual controversy. *See Elecs. for Imaging*, 394 F.3d at 1345–47; *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1357–58 (Fed. Cir. 2004); *see also Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated in part on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

Columbia's Rule 12(b)(1) motion to dismiss Counts IV through VII should be denied. For the reasons set forth in plaintiffs' opposition brief, Columbia's Rule 12(b)(6) motion to dismiss all but one of the remaining claims should also be denied.

Dated: March 15, 2005                    Respectfully submitted,


/s/ Donald R. Ware
Donald R. Ware (BBO # 516260)
Claire Laporte (BBO # 554979)
Sarah Cooleybeck (BBO # 631161)
Carla Miriam Levy (BBO # 654212)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
Attorneys for BIOGEN IDEC INC., BIOGEN IDEC MA, INC. and GENZYME CORPORATION